IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RICHARD BELLIVEAU,
      Plaintiff,

-vs-

BARCO, INC., and BARCO, N.V.,
      Defendants.

CAUSE NO.:
AU-17-CA-00379-SS

# ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Barco, Inc. and Barco, N.V. (collectively, Barco)'s Motion for Reconsideration [#219], Plaintiff Richard Belliveau's Response [#228] in opposition, and Barco's Reply [#231] in support, as well as Barco's Unopposed Motion for Entry of Judgment Under Rule 54(b) [#241]. Having considered the documents, the governing law, and the case file as a whole, the Court now enters the following opinion and orders.

## Background

### I. Factual Background

Richard Belliveau, an inventor, cofounded High End Systems, Inc. (High End) in 1987. Sealed Resp. Mot. Summ. J. [#148-2] Belliveau Decl. at 1.[1] High End is a lighting company that specializes in producing complex lighting and projection systems. *Id.* From 1987 to 1998 and from 2004 to 2017, Belliveau was employed by High End. *Id.* at 1–4. During the years Belliveau was not employed by High End, he worked independently as an inventor and secured a number of patents related to lighting and projection systems. *Id.* at 1. Belliveau is the sole owner of these patents. *Id.*

---

[1] For ease of reference, all page number citations refer to CM/ECF pagination.

1

After Belliveau returned to High End in 2004 to serve as the company's Chief Technology Officer (CTO), Belliveau and High End entered into a contract granting High End an exclusive license to use the IP that Belliveau developed during his time away from the company. *Id.* [#148-4] Ex. A (Exclusive License and Option Agreement). In exchange for this exclusive license, High End agreed to pay royalties to Belliveau and to use commercially reasonable efforts to commercialize Belliveau's IP. Exclusive License and Option Agreement at 3–10; *see also* Resp. Mot. Summ. J. [#147] at 11. Following the execution of this license agreement, High End was acquired by Barco.[2] Belliveau Decl. at 1.

In January 2017, Barco began to explore a possible sale of High End to another company, Electronic Theatre Controls, Inc. (ETC). As due diligence progressed, Barco repeatedly consulted Belliveau to determine whether the proposed transaction might affect intellectual property related to Barco's products. Sealed Resp. Mot. Summ. J. [#148-40] Ex. 36 (Koester Dep.) at 4–5; *id.* [#148-21] Ex. 16 (Due Diligence Emails) at 2–3; *id.* [#148-22] Ex. 17 (Braet Dep.) at 4; *see also* Resp. Mot. Summ. J. [#147] at 9 (describing Belliveau assistance during due diligence process). Though Belliveau was generally cooperative in answering these inquiries, he "started to sense that Barco was withholding information." Resp. Mot. Summ. J. [#147] at 9.

On February 16, 2017, Belliveau met with ETC and was informed that he would not be continuing on as CTO. Resp. Mot. Summ. J. [#147] at 10. In response, Belliveau tendered his resignation. Sealed Resp. Mot. Summ. J. [#148-32] Ex. 27 (Resignation Email) at 2. Belliveau alleges that Barco "knew that [ETC] planned to tell Belliveau that ETC was going to fire him as CTO." *Id.* Less than a week later, Belliveau filed suit against High End, alleging High End had breached the Exclusive License and Option Agreement by "refusing to engage in [a] mandatory

---

[2] Though High End was rechristened "Barco Lighting Systems, Inc." following its acquisition by Barco, *see* Resp. Mot. Summ. J. [#147] at 8, the Court will continue to refer to the company as "High End."

mediation procedure" necessary to investigate infringement of Belliveau's IP by an unnamed third party—presumably, Barco.[3] Notice Removal [#1-1] Ex. A (Pet.) at 8.

Shortly after Belliveau filed suit against High End—and in reliance on a prior suggestion made by Belliveau himself[4]—Barco and High End entered into an agreement granting Barco a sublicense to use Belliveau's IP. Resp. Mot. Summ. J. [#147] at 11; Sealed Resp. Mot. Summ. J. [#148-35] Ex. 30 (Sublicense Agreement) at 1. Scott Brown, a Barco-appointed High End officer who also served as an officer and director of Barco, signed the Sublicense Agreement on behalf of High End. Sublicense Agreement at 10; Resp. Mot. Summ. J. [#147] at 11. Belliveau alleges no in-house lawyers or outside counsel represented High End's interest in the negotiations. Resp. Mot. Summ. J. [#147] at 11. Barco did, however, have to negotiate with ETC's in-house counsel regarding the terms of the Sublicense Agreement, Sealed Reply Mot. Summ. J. [#153-4] Ex. 3 (Verheggen Dep.) at 5–9, and it is unclear why Belliveau believes the buyer of High End was unmotivated to protect the interests of the company it was purchasing.

In any event, despite ETC's involvement in the negotiations, Belliveau contends Barco used its control over High End to cause High End to grant the sublicense to Barco less than a week before Barco sold High End to ETC in March 2017. Resp. Mot. Summ. J. [#147] at 10–11. Belliveau further contends that by granting this sublicense, High End breached its obligation under the Exclusive License and Option Agreement to use commercially reasonable efforts to commercialize Belliveau's IP. *Id.*

---

[3] Belliveau later confirmed Barco was the suspected infringer. *See* Sixth Am. Compl. [#103] at 20–21. Despite this suspected infringement, Belliveau has not brought patent infringement claims against Barco in this litigation. *See id.* at 18–36 (listing causes of action).

[4] The particulars of Belliveau's suggestion have been placed under seal. *See* Due Diligence Emails at 2 (outlining Belliveau's suggestion); Sealed Resp. Mot. Summ. J. [#148-3] Belliveau Suppl. Decl. at 2 (acknowledging suggestion); Order of Sept. 7, 2018 [#150] at 1 (placing response and attachments under seal).

3

## II. Procedural Posture

After initially filing suit against High End in state court, Belliveau amended his complaint to add Barco as a defendant and dismissed all claims against High End. Notice Removal [#1-8] Ex. H (Fourth Am. Pet.) at 1; *id.* [#1-9] Ex. I (Pl.'s Mot. Dismiss) at 2. In the wake of this amendment, Barco removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. *Id.* [#1] at 4–6. After several subsequent amendments to his complaint, Belliveau eventually alleged Barco is liable for High End's supposed breach of the Exclusive License and Option Agreement between Belliveau and High End. Sixth Am. Compl. [#103] at 20. Belliveau also asserted claims against Barco for breach of fiduciary duty, fraud by misrepresentation and nondisclosure, constructive fraud, and unjust enrichment. *Id.* at 22–35.

In 2018, Barco moved for summary judgment on all of Belliveau's claims. Mot. Summ. J. [#122]. In January 2019, the Court granted summary judgment in favor of Barco on Belliveau's breach of contract, fraud by misrepresentation, and unjust enrichment claims. Order of Jan. 18, 2019 [#197] at 16. But the Court denied summary judgment on Belliveau's breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims, on the ground that genuine issues of material fact existed as to whether a fiduciary relationship existed between Belliveau and Barco. *Id.* at 15–16. Belliveau later moved for reconsideration of the Court's order granting summary judgment to Barco on the breach of contract claim. Belliveau Mot. Recons. [#221]. The Court denied the motion. Order of Feb. 21, 2019 [#221] at 10–11.

Now Barco moves for reconsideration of the summary judgment order to the extent that order denied summary judgment on the breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims. Barco Mot. Recons. [#219]. Meanwhile, Belliveau moves the Court to certify its partial summary judgment on Belliveau's claims as a final judgment under Rule 54(b)

so that Belliveau can immediately appeal the Court's ruling on his breach of contract claim to the Fifth Circuit. Mot. Certify [#241]. Both pending motions are ripe for review.

## Analysis

I. **Motion for Reconsideration**

   A. **Legal Standards**

   1. **Summary Judgment**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the party moving for summary judgment has made an initial showing that there is no evidence to support the opposing party's case, the opposing party must come forward with competent summary judgment evidence sufficient to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In ruling on a motion for summary judgment, the court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 586; *Washburn*, 504 F.3d at 508. But it is not the court's duty to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rather, it is the nonmovant's duty to identify specific

evidence in the record and to articulate the precise manner in which that evidence supports the nonmovant's claim. *Id.*

Additionally, mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are likewise not competent summary judgment evidence. *Id.* And, particularly relevant here, while the court must not make credibility determinations or weigh evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55, it is "well settled" in the Fifth Circuit that "when the sole evidence purporting to create a genuine issue of material fact . . . is an affidavit that conflicts with deposition testimony," the party seeking to rely on the affidavit must provide a coherent explanation for the conflict in order to avoid summary judgment. *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482 (5th Cir. 2002).[5]

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing

---

[5] *Cf. S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."); *Albertson v. T.J. Stevenson & Co. Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) ("[A] nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."); *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 746 (S.D. Tex. 2006) ("Conflicts between deposition testimony and subsequent affidavits or declarations are resolved in favor of the deposition testimony unless the conflict is explained."); *but see Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893–95 (5th Cir. 1980) ("[A] district court . . . cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition[,] . . . [though] the two in conjunction may disclose an issue of credibility." (internal quotation marks and citation omitted)).

sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### 2. Reconsideration

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 336 (5th Cir. 2017); *see also* FED. R. CIV. P. 54(b). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Kroger*, 864 F.3d at 336 (internal quotation marks and citation omitted).

### B. Application

In its motion for summary judgment, Barco contended it was entitled to summary judgment on Belliveau's breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims because Belliveau could not show that a fiduciary relationship existed between Belliveau and Barco. Mot. Summ. J. [#122] at 13–24. The Court denied Barco's order and concluded, "[o]n the basis of the current record before the Court," that genuine issues of material fact existed as to whether a fiduciary relationship had existed between the parties. Order of Jan. 18, 2019 [#197] at 14–15. Barco now moves for reconsideration on the ground that any fact issues created by Belliveau's declarations have "now been conclusively removed by his uncontroverted contradictory testimony" at his deposition. Barco Mot. Recons. [#219] at 5.

As a preliminary matter, Belliveau suggests the Court should deny Barco's motion because Barco unduly delayed in filing its motion, and "judicial economy require[s] parties to promptly seek reconsideration." Resp. Barco Mot. Recons. [#228] at 5. Belliveau points out the Court did not rule on Barco's motion for summary judgment until two months after Belliveau was deposed, and Barco might have easily supplemented its filings to incorporate Belliveau's

deposition testimony during that time. *See id.* at 5, 7–9. In addition, Belliveau suggests the Court applied this same principle of "undue delay" to deny Belliveau's own motion for reconsideration. *Id.* at 8.

The Court agrees with Belliveau that Barco erred in failing to supplement its filings to incorporate Belliveau's deposition testimony. Barco also should have filed its motion for reconsideration in a more timely fashion. But in spite of these shortcomings, the Court opts to entertain Barco's motion for reconsideration, for three reasons.

First, under Rule 54(b), the Court can reconsider and reverse decisions adjudicating fewer than all of the claims between the parties "at any time" before the entry of final judgment. FED. R. CIV. P. 54(b). And the Court may do so "for any reason it deems sufficient, even in the absence of new evidence." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 336 (5th Cir. 2017).

Second, consideration of Barco's motion will further the interest of judicial economy, notwithstanding Barco's delay in filing the motion. If the Court grants Barco's motion for reconsideration and grants summary judgment to Barco on the breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims, then Belliveau will be able to appeal those claims at the same time he appeals the Court's ruling on his breach of contract claim. *Cf.* Mot. Certify [#241] at 4 ("[T]he best path forward is not to try the fiduciary-duty claims alone . . . ."). This might allow the Court to avoid the prospect of conducting two separate trials—a first trial on the breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims, and a second trial on the breach of contract claim if the Fifth Circuit determines the Court erred in addressing that claim.[6]

---

[6] *Cf.* Mot. Certify [#241] at 4 ("Belliveau will certainly appeal the summary-judgment order[,] [a]nd if the Fifth Circuit reverses on the contract or fraud claims after trial, then it will remand for a *second* trial covering the same evidence under different legal theories.")

8

Third, the Court's consideration of Barco's motion is not at odds with the Court's denial of Belliveau's own motion for reconsideration. Belliveau suggests the Court denied his motion for reconsideration because of undue delay on Belliveau's part. Resp. [#228] at 8. But Belliveau misreads the Court's summary judgment order. In part, Belliveau's motion for reconsideration had argued reconsideration was merited because Belliveau had not received a chance to rebut several arguments raised by Barco in reply and because Belliveau wished for the Court to consider an expert report that was unavailable when Belliveau filed his response. Belliveau Mot. Recons. [#203] at 5. The Court discounted these excuses and noted that Belliveau had been allowed to file a letter brief rebutting Barco's arguments and could have filed a motion for leave to file a surreply if necessary to address arguments raised by Barco in reply. Order of Feb. 21, 2019 [#221] at 9 n.7. The Court also noted that Belliveau should have filed a motion for leave to supplement his response with the expert report in question, since Belliveau received the report several weeks before the Court ruled on Barco's summary judgment motion. *Id.* at 10 n.8. But the Court did not deny Belliveau's motion on these bases. Instead, the Court issued an 11-page ruling addressing all of the substantive arguments raised by Belliveau's motion for reconsideration. *Id.* at 9–11. The Court now extends the same consideration to Barco and turns to the substantive arguments put forward by Barco's motion for reconsideration.

Barco's motion for reconsideration argues that Belliveau's declarations and deposition testimony fail to create a genuine issue of material fact as to the existence of a fiduciary relationship between Belliveau and Barco. Barco Mot. Recons. [#228] at 5, 13.

   1.   **Fiduciary Relationship**

Belliveau has asserted three different fiduciary relationships existed between himself and Barco: (1) an attorney-client relationship; (2) a principal-agent relationship; and (3) an informal

9

fiduciary relationship. Resp. Mot. Summ. J. [#147] at 21–23. The Court considers each of these alleged fiduciary relationships in turn.

### a. Attorney-Client Relationship

Attorney-client relationships are contractual and "arise[] from a lawyer's agreement to render professional services to a client." *Kiger v. Balestri*, 376 S.W.3d 287, 290–91 (Tex. App.—Dallas 2012, pet. denied). Such an agreement can be either explicit or implicit. *Id.*; *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.); *see also Valls v. Johanson & Fairless, LLP*, 314 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting relationship may arise by implication if an attorney knows someone reasonably expects him to provide legal services but does nothing to correct that impression). "But whether the agreement is express or implied, there must be [objective] evidence *both* parties intended to create an attorney-client relationship." *Kiger*, 376 S.W.3d at 291 (emphasis in original).[7] Thus, one party's subjective belief that such an agreement exists "is insufficient to raise a question of fact to defeat summary judgment." *Id.*

Belliveau argues his declaration demonstrates he had an attorney-client relationship with Barco's lawyers "with respect to sublicensing his IP." Resp. Mot. Summ. J. [#147] at 22. In his declaration, Belliveau asserts that he was "involved" with making decisions regarding the sublicensing of his IP and that Barco's in-house counsel was also involved in making these decisions. Belliveau Decl. at 2. Belliveau further asserts he "worked with" Barco in connection with the sublicensing of his IP and communicated with two Barco attorneys, Kurt Verheggen and Carolyn Vignery, on multiple occasions. *Id.* The former works at Barco's international headquarters in Belgium and the latter in Atlanta, while Belliveau lives and works in Austin,

---

[7] *See also Moran*, 946 S.W.2d at 405 ("To determine if there was an agreement or meeting of the minds one must use objective standards of what the parties said and did and not look to their subjective states of mind.").

Texas. Sixth Am. Compl. [#103] at 3. At his deposition, Belliveau clarified he had met Verheggen "[m]aybe twice" and encountered Vignery "maybe" 8–12 times. Barco Mot. Seal [#220-4] Ex. 5 at 4. Belliveau also testified at his deposition that over the course of a decade, he had exchanged perhaps twenty calls or emails with Verheggen and Vignery regarding the Exclusive License and Option Agreement between Belliveau and Barco. Belliveau Mot. Seal [#229-1] Ex. A at 6. Within the limited scope of these interactions, Belliveau asserts he "sought legal advice" from Verheggen and Vignery and "authorized them to act on [his] behalf with respect to sublicensing of the Belliveau IP." Belliveau Decl. at 2.

These allegations suggest Belliveau believed he had entered into an attorney-client relationship with Verheggen and Vignery. In order to survive summary judgment, however, Belliveau must point to objective evidence that *both* parties intended to create the relationship. *Kiger*, 376 S.W.3d at 291. Belliveau's declaration is bereft of any suggestion that Verheggen and Vignery intended to create such a relationship with Belliveau.

For example, even when viewed in the light most favorable to Belliveau, Verheggen and Vignery's involvement with the sublicensing of Belliveau's IP does not suggest they intended to forge an attorney-client relationship with Belliveau in his personal capacity. To the contrary, Verheggen and Vignery's involvement with High End's sublicensing of Belliveau's IP to third parties merely shows that Verheggen and Vignery were acting as attorneys for Barco and High End. *Cf. In re Mktg. Inv'rs Corp.*, 80 S.W.3d 44, 49 (Tex. App.—Dallas 1998, no pet.) ("In a corporation's affairs, ... there is but one client—the corporation."). Perhaps for this reason, there is no evidence Verheggen and Vignery ever asked Belliveau to pay them for allegedly providing him with personal legal services outside of his capacity as CTO of High End, nor is there any evidence Belliveau ever offered to pay the attorneys for such services.

11

Similarly, although Belliveau also asserts he "sought legal advice" from Verheggen and Vignery with respect to the sublicenses and "authorized them to act on [his] behalf,"[8] Belliveau Decl. at 2, neither of these unilateral actions by Belliveau support the notion that Verheggen or Vignery agreed or intended to enter into an attorney-client relationship with Belliveau, or even understood that Belliveau was seeking legal advice from them in a personal capacity. And while Belliveau later submitted a supplementary declaration that goes further and asserts he "sought and obtained legal advice" from Verheggen and Vignery in his personal capacity in connection with the sublicensing of his IP, Belliveau Supp. Decl. at 5, Belliveau eventually contradicted these conclusory assertions, without explanation, when he testified at his deposition that he could not recall ever directly discussing with Verheggen or Vignery *any* of the four sublicenses that High End entered into between 2008 and 2017. Barco Mot. Seal [#220-4] Ex. 5 at 7–17.

All in all, the Court concludes the allegations contained within Belliveau's declarations are conclusory, contradicted by Belliveau's own deposition, and insufficient to create a genuine issue of material fact as to the existence of an attorney-client relationship between Belliveau and Barco's attorneys.

### b. Agency Relationship

A principal-agent relationship can be created through actual or apparent authority. *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 60 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In order to establish the existence of such a relationship, it must be shown the principal possessed the right to control "both the means and details of the process by which the agent is to

---

[8] It is unclear what actions Verheggen and Vignery could have taken "on Belliveau's behalf" during the sublicensing negotiations, since as far as the Court is aware, Belliveau was not a party to the resulting sublicense agreements executed between the third-party sublicensees and High End in its capacity as the Exclusive Licensee. *But see* Sealed Resp. Mot. Summ. J. [#148-3] Belliveau Supp. Decl. at 5 (putting forward conclusory assertion that Belliveau participated in sublicensing discussions "not as CTO, but as owner and licensee [sic]" of the Belliveau IP).

accomplish his task." *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 829 (Tex. App.—Dallas 2010, no pet.).

In its reply in support of its motion for summary judgment, Barco argued Belliveau had not pointed to any evidence creating a genuine issue of material fact as to whether an agency relationship existed between Belliveau and Barco. Reply Mot. Summ. J. [#152] at 14–15. In response, Belliveau argued a fact issue existed because "Belliveau's testimony confirms that he had substantial authority to direct Barco's actions related to sublicensing his IP and that all parties manifested consent to this arrangement." Resp. Mot. Summ. J. [#147] at 22.

Belliveau's declarations are insufficient to create a fact issue as to the existence of an agency relationship with Barco. For starters, Belliveau fails to allege he possessed the right to control the means and details by which Barco was to carry out tasks on his personal behalf, as opposed to on behalf of Belliveau in his capacity as CTO of High End. *See* Belliveau Decl. at 2–3; Belliveau Supp. Decl. at 4–6. Further, the allegations Belliveau does put forward are too conclusory to create a fact issue. For example, Belliveau asserts that he "played a significant role directing sublicensing activities" and that "Barco employees, including its in-house lawyers, agreed to act at my direction on matters related to sublicensing of my IP." Belliveau Supp. Decl. at 4. But Belliveau does not identify any of those Barco employees, and none of the other Barco employees alluded to in Belliveau's declarations appear to qualify as Belliveau's agents. *See id.* As the Court has already explained, Belliveau's declarations are insufficient to create a fact issue as to the existence of an attorney-client relationship with either Verheggen or Vignery, much less a principle-agent relationship.[9] *See supra* Section I.B.1. And although Belliveau declares he

---

[9] Belliveau's conclusory declarations regarding the existence of an agency relationship with Barco's "in-house lawyers" are also undermined by Belliveau's own testimony during his deposition. For example, Belliveau's supplemental declaration states that Belliveau "direct[ed] Barco as to what third parties were potentially infringing my IP, what IP those third parties were potentially infringing, and how to approach those third parties about

13

"worked with" Barco employee Sophia Braet in connection with the sublicensing of his IP, *see* Belliveau Decl. at 3, that assertion falls far short of alleging an agency relationship.

In sum, the Court concludes the allegations contained within Belliveau's declarations are insufficient to create a fact issue as to the existence of a principal-agent relationship between Belliveau and Barco's employees.

### c. Informal Fiduciary Relationship

An informal fiduciary relationship "may arise where one person trusts in and relies upon another." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (internal quotation marks and citation omitted). "But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). Such informal fiduciary relationships are "extraordinary" and "will only be established in exceptional cases." *Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, 64 F.3d 227, 231 (5th Cir. 1995) (internal quotation marks and citation omitted). To impose an informal fiduciary relationship upon parties involved in a business transaction, the parties must have a preexisting relationship that exists "apart from" the transaction forming the basis of the suit. *Schlumberger*, 959 S.W.2d at 177; *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594–95 (Tex. 1992) (noting parties to a contract are normally "free to pursue [their] own interests, even if it results in a breach of that contract, without incurring tort liability"), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002).[10]

---

potential licenses." Belliveau Supp. Decl. at 4. But at his deposition, Belliveau testified he had never "reach[ed] out to somebody [at Barco] to ask for help with a potential infringer." Barco Mot. Seal [#220-4] Ex. 5 at 5.

[10] *See also id.* ("[M]ere subjective trust does not, as a matter of law, transform arm's length dealing into a fiduciary relationship."); *cf. Kilpatrick v. Kilpatrick*, No. 02–12–00206–CV, 2013 WL 3874767, at *4 (Tex. App.—Fort Worth July 25, 2013, pet. denied) ("A person is justified in placing confidence in the belief that another party

14

The Court concludes Belliveau has failed to identify a fact issue as to the existence of an informal fiduciary relationship between himself and Barco. Belliveau argues his "longstanding relationship with Barco" is sufficient to create a fact issue because "[f]or years, Barco worked closely with Belliveau in sublicensing his IP." Resp. Mot. Summ. J. [#147] at 23; Belliveau Supp. Decl. at 4. This argument fails because Belliveau has not identified a preexisting relationship with Barco that exists apart from the transaction forming the basis of the suit. *Schlumberger*, 959 S.W.2d at 177. Rather, the allegations put forward by Belliveau in support of the existence of such a relationship relate exclusively to the sublicensing of Belliveau's IP—sublicensing that was contractually governed by the same agreement upon which Belliveau sought to hold Barco accountable in this suit. *See* Order of Jan. 18, 2019 [#197] at 2–4, 6–14; *see also* Resp. Mot. Summ. J. [#147] at 23 ("For years, Barco worked closely with Belliveau in sublicensing his IP . . . ."). In this context, Belliveau's subjective trust that Barco and High End would look out for his best interest[11] is insufficient to raise a fact issue as to the existence of an informal fiduciary relationship between himself and Barco. *See Crim Truck*, 823 S.W.2d at 594–95 ("The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship[,] . . . [even if] the relationship has been a cordial one, of long duration . . . .").

### d. Conclusion

The Court concludes Belliveau has failed to identify a genuine issue of material fact as to the existence of a fiduciary relationship between himself and Barco. Previously, the Court had reached the opposite conclusion and denied summary judgment on several of Belliveau's claims

---

will act in his best interest only when he is accustomed to being guided by the other party's judgment or advice and the parties have a long association in a business relationship and a personal friendship.").

[11] *See* Belliveau Supp. Decl. at 4 ("I trusted [Barco] . . . to protect my IP-related interests, and I view the Barco sublicense as a severe betrayal of that trust).

on that basis. Order of Jan. 18, 2019 [#197] at 14–16. In light of the Court's new conclusion, the Court must now reexamine Belliveau's claims for breach of fiduciary duty, fraud by nondisclosure, and constructive fraud to determine whether additional fact issues preclude summary judgment or, alternatively, whether Barco is now entitled to summary judgment on those claims.

### 2. Breach of Fiduciary Duty Claim

In order to recover on a claim for breach of fiduciary duty, the plaintiff must establish such a duty existed in the first place. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (granting summary judgment on plaintiff's breach of fiduciary duty claims on the ground that plaintiff had failed to establish the existence of a fiduciary relationship). Here, Belliveau has failed to identify an issue of fact as to whether Barco owed such a duty because, as noted above, Belliveau has failed to identify an issue of fact as to the existence of a predicate fiduciary relationship. *See supra* Section I.B.1. The Court therefore grants Barco's motion for summary judgment on Belliveau's breach of fiduciary duty claim.

### 3. Fraud by Nondisclosure Claim

In Texas, a failure to disclose a material fact constitutes fraud if the defendant had a duty to disclose the fact in question. *See McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 585 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[A] general duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression."); *see also Union Pac. Res. Grp. v. Rhône–Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001) ("Failure to disclose a material fact is fraudulent only if the defendant has a duty to disclose that fact."). A duty to disclose can arise by operation of law when "one party voluntarily discloses some but less than all material facts, so that he must

16

disclose the whole truth, i.e., all material facts, lest his partial disclosure convey a false impression." *Union Pac.*, 247 F.3d at 586.

The Court's prior summary judgment order was inconsistent in its treatment of Belliveau's fraud by nondisclosure claim. In the course of rejecting Belliveau's attempt to pierce the corporate veil between Barco and High End, the Court ruled Belliveau had failed to identify a genuine issue of material fact as to whether Barco had committed fraud by nondisclosure. *See* Sealed Order of Jan. 18, 2019 [#197-1] at 6–10. But later in that same order, the Court denied summary judgment on Belliveau's fraud by nondisclosure claim on the ground that fact issues existed as to whether a fiduciary relationship between the parties gave rise to a duty to disclose information to Belliveau. *Id.* at 15.

The Court has now concluded there is no genuine issue of material fact as to the existence of a fiduciary relationship between Belliveau and Barco. *See supra* Section I.B.1. And for the reasons previously explained in the Court's prior summary judgment order, the Court again concludes there is no genuine issue of material fact as to whether Barco breached a duty to disclose information to Belliveau. *See* Sealed Order of Jan. 18, 2019 [#197-1] at 6–10. Thus, the Court grants Barco's motion for summary judgment on Belliveau's fraud by nondisclosure claim.

### 4. Constructive Fraud Claim

In order to recover on a constructive fraud claim, the plaintiff must establish "the breach of a legal or equitable duty that one party owes to another." *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). Belliveau argues Barco owed him an equitable duty emerging from a fiduciary relationship between himself and Barco. Resp. Mot. Summ. J. [#147] at 21 n.8. But Belliveau has failed to identify an issue of fact as to the existence of such a fiduciary relationship. *See*

*supra* Section I.B.1. The Court therefore grants summary judgment to Barco on Belliveau's constructive fraud claim.

## II. Motion for Entry of Judgment Under Rule 54(b)

Belliveau asks the Court to certify the Court's prior summary judgment order as a final judgment under Rule 54(b) so that Belliveau may immediately appeal to the Fifth Circuit. Mot. Certify [#241] at 8–12. Belliveau explains certification might avoid the risk of wasting judicial resources because Belliveau intends to appeal the Court's order granting summary judgment on his breach of contract claim, and if he is successful, the Court might have to conduct two separate trials—a first trial on the breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims, and a second trial on the resuscitated breach of contract claim. *Id.* at 4.

Under Rule 54(b), a court "*may* direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). The Court declines to do so here. The Court also notes there is no longer a risk that the Court will have to conduct two separate trials on Belliveau's claims because the Court herein grants summary judgment on Belliveau's breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims.

## Conclusion

The Court concludes Belliveau has failed to establish genuine issues of material fact sufficient to preclude summary judgment on Belliveau's breach of fiduciary duty, fraud by nondisclosure, and constructive fraud claims. The Court therefore grants Barco's motion for reconsideration and grants summary judgment in favor of Barco on those claims. Because this order eliminates the risk the Court will have to conduct two separate but redundant trials on Belliveau's claims, the Court denies Belliveau's motion to certify.

Accordingly,

IT IS ORDERED that Barco's Motion for Reconsideration [#219] is GRANTED;

IT IS FURTHER ORDERED that Barco's Motion for Summary Judgment [#122] is GRANTED IN PART as described in this opinion;

IT IS FURTHER ORDERED that the Court's Order of Jan. 18, 2019 [#197-1] is SUPERSEDED to the extent it is inconsistent with the Court's opinion and orders herein; and

IT IS FINALLY ORDERED that Belliveau's Motion for Entry of Judgment Under Rule 54(b) [#241] is DENIED.

SIGNED this the 20th day of June 2019.

SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE